UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK D. JENSEN,

        Plaintiff,

  v.                                    Case No. 11-C-0803

JAMES R. SCHWOCHERT,

        Defendant.

**ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT**

On December 18, 2013, the court issued its decision and order granting the petition for federal relief under 28 U.S.C. § 2254 in the above matter. Judgment was entered the same day. On January 14, 2014, Respondent filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure on the ground that the judgment was based on a manifest error of law. Rather than await further briefing and add to the delay in resolving this case, the court will decide the motion on the record before it. For the reasons that follow, the motion will be denied.

**I. BACKGROUND**

Julie Jensen died on December 3, 1998, after having ingested ethylene glycol, a chemical compound commonly found in anti-freeze. The issue at trial was whether Julie had been poisoned by her husband, Petitioner Mark Jensen, or committed suicide. In the weeks before her death, Julie had made statements to police and to others denying any intent to take her own life and expressing

a fear that Mark Jensen was planning to kill her. She even wrote a letter to police setting forth certain facts that strongly suggested her husband was planning to poison her. Despite Julie's pre-death accusations against her husband, it was not until March 2002 that Jensen was charged with her murder. The admissibility of Julie's statement to the police was a central issue in the case from its inception.

The effort to bring a final conclusion to this tragic case was sadly frustrated by several shifts in the law governing the admission of Julie's statements which both parties, at least initially, viewed as key evidence in the case. Before trial, Jensen moved to exclude Julie's statements to police and others on the ground that allowing the State to use them at trial would violate his right to confront the witnesses against him guaranteed by the Sixth Amendment to the United States Constitution. The trial court initially denied Jensen's motion in a September 4, 2003 decision that reasonably applied the framework set out by the Supreme Court in *Ohio v. Roberts*, 448 U.S. 56 (1980), which at the time was clearly established federal law. Six months later, however, the Supreme Court abrogated *Roberts* in *Crawford v. Washington*, 541 U.S. 36 (2004), and sharply limited the admissibility of out of court statements made to police by witnesses unavailable to testify at trial. The trial court reconsidered its ruling in light of *Crawford* and granted Jensen's motion excluding Julie's letter and statement to police.

In its reconsideration ruling, the trial court rejected the State's argument that Jensen had forfeited his right to confront Julie by murdering her. The court held that the so-called forfeiture by wrongdoing doctrine did not apply simply on a showing that the defendant caused the death of a person who previously made accusations against him. For the forfeiture exception to apply, the trial court held, the State must prove the murder was motivated by the specific intent to prevent the

person from testifying. If the rule were otherwise, the court reasoned, there would have been no reason for the development of the rule allowing the use of dying declarations at trial:

> [i]f an accused forfeits or waives the right of cross-examination merely by killing the victim to "put her out of the way," then there would have been no reason for the development of the Dying Declaration Rule, which . . . makes sense only in an evidentiary framework in which the mere fact that the defendant can be convincingly shown to the judge to have killed the declarant does not, by itself, justify exception to the requirements of the Confrontation Clause.

(Cir. Ct. Order 4, Aug. 4, 2004, ECF No. 45-17 at 5-6.)

The State filed an interlocutory appeal and petition to bypass to the Wisconsin Supreme Court. The Wisconsin Supreme Court granted the bypass petition and reversed that portion of the trial court's decision excluding Julie's statements and letter to the police. The Wisconsin Supreme Court held that the trial court erred in its analysis of the forfeiture doctrine and adopted the broader version of the doctrine that the trial court had rejected. *State v. Jensen*, 2007 WI 26, ¶ 2, 299 Wis. 2d 267, 727 N.W.2d 518 (*Jensen I*). The court concluded that where "the State can prove by a preponderance of the evidence that the accused caused the absence of the witness, the forfeiture by wrongdoing doctrine will apply to the confrontation rights of the defendant." *Id*. at ¶ 57. It rejected Jensen's argument that forfeiture only applies if the witness's absence was procured for the particular purpose of preventing the witness from testifying.

This was the law under which Jensen's case proceeded to trial. On remand, the trial court found by a preponderance of the evidence that Jensen caused the death of his wife and thus forfeited his right to confront her as a witness against him. Julie's letter and statements to police were therefore held admissible. Following a six-week trial and some thirty hours of deliberation, a jury found Jensen guilty of First Degree Intentional Homicide in the death of his wife. Jensen immediately appealed.

3

In the meantime, four months after Jensen's trial, the United States Supreme Court decided *Giles v. California*, in which it rejected the broad interpretation of the forfeiture doctrine that the Wisconsin Supreme Court had adopted in its decision reversing the trial court's order excluding Julie's letter and statements to police. 554 U.S. 353 (2008). The Supreme Court held in *Giles* that a defendant forfeits his right to confrontation only when he procured the absence of the witness for the particular purpose of preventing his or her testimony. *Id.* at 376–77. In other words, it was not enough that the defendant's conduct had the effect of making the witness unavailable to testify; for the statement to be admissible, the defendant's conduct must have been motivated by the specific intent to prevent the witness from testifying. *Id.* at 361–62.

Notwithstanding *Giles*, the Wisconsin Court of Appeals affirmed Jensen's conviction, and the Wisconsin Supreme Court denied his petition for review. On appeal, the State did not even argue that Julie's statements were admissible under *Giles* based solely on the trial court's pretrial finding that Jensen had caused Julie's death. Instead, the State argued that the court of appeals should find that Jensen had killed Julie to prevent her from testifying at a possible divorce action that might otherwise have occurred, and then invited the court to conclude that the intent to prevent her from testifying in such a potential future action was sufficient to meet *Giles*' narrow version of the forfeiture rule. The court of appeals declined the State's "invitation to adopt a broad interpretation of the post-*Giles* forfeiture by wrongdoing exception," *State v. Jensen*, 2011 WI App 3, ¶ 34, 331 Wis. 2d 440, 794 N.W.2d 482 (*Jensen II*). Instead, the State appellate court assumed that admission of Julie's statements to police violated Jensen's confrontation rights and proceeded to determine whether the violation was prejudicial. *Id.* at ¶ 35. The court concluded that the trial court's error, if any, was harmless and affirmed Jensen's conviction.

4

In granting Jensen's petition for federal relief under 28 U.S.C. § 2254, this court, consistent with the Wisconsin Court of Appeals' assumption, concluded that the admission of Julie's letter and statements to police based solely on the trial court's determination that a preponderance of the evidence showed that Jensen had poisoned her was contrary to clearly established federal law as announced by the Supreme Court in *Giles*. This court further held that the admission of such evidence "had substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation omitted), and thus the court of appeals' decision holding that the error was harmless likewise constituted an unreasonable application of clearly established federal law. It is the judgment based upon this decision that the Respondent now asks the court to alter or amend.

**II. ANALYSIS**

"Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008) (citing *Sigsworth v. City of Aurora*, 487 F.3d 506, 511–12 (7th Cir. 2007)). Respondent argues that the court erred in concluding that the Supreme Court's decision in *Giles v. California* constituted clearly established federal law applicable to the case. *Giles* does not apply, Respondent contends, because it was not decided until after the trial court had ruled on the admissibility of Julie's letter and statements describing her fears that Petitioner intended to murder her. Because the Wisconsin Court of Appeals declined the State's invitation to decide that the forfeiture exception to the Confrontation Clause nevertheless could apply under the facts of the case upon a finding that Jensen killed Julie to prevent her testimony at a possible divorce, and

5

Case 2:11-cv-00803-WCG   Filed 01/23/14   Page 5 of 14   Document 68

instead assumed a violation had occurred, Respondent contends that the trial court was the last state court to decide the issue on the merits. Based on *Greene v. Fisher*, 132 S. Ct. 38 (2011), Respondent contends that federal review of the merits of Petitioner's claim under § 2254 is therefore of the trail court's decision based only on clearly established federal law as it existed at the time the trial court issued its decision. Since *Giles* had not yet been decided, Respondent contends it does not constitute "clearly established federal law" within the meaning of § 2254(d).

The court addressed this issue in its decision and order granting the petition (Decision and Order 12–14, ECF No. 65), but given the importance of the case, will further address Respondent's argument here. Unlike the Pennsylvania Supreme Court in *Greene*, the Wisconsin Court of Appeals in this case actually issued a decision applying the law established by the United States Supreme Court after the trial. In other words, the court of appeals applied *Giles*. It assumed a violation of Petitioner's confrontation rights under *Giles*, but concluded the erroneous admission of the evidence was harmless. The appellate court therefore denied Petitioner's claim that his confrontation rights had been violated and affirmed his conviction. "For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by this Court 'refers to the holdings, as opposed to the dicta, of this Court's decisions *as of the time of the relevant state-court decision*.'" *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004) (emphasis added) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). The relevant state-court decision in this case is the decision of the Wisconsin Court of Appeals affirming Jensen's conviction. *Giles* was established law as determined by the Supreme Court at the time of the Wisconsin Court of Appeals' decision. *Giles* therefore applies.

Even if the Wisconsin Court of Appeals had elected not to apply *Giles*, the result would be the same. Jensen had preserved the issue of the admissibility of Julie's letter and statement to police

6

at trial and raised it on the direct appeal of his conviction. At the time the Court of Appeals issued its decision affirming Jensen's conviction, *Giles* was clearly established federal law. To repeat, "'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Because Jensen had preserved the issue at trial and had at least a statutory right to his direct appeal, the court of appeals was required to decide his confrontation claim on the merits. A state court tasked with reviewing a defendant's conviction may not insulate its decision from federal review under § 2254 by ignoring clearly established federal law. To hold otherwise would eviscerate the limited federal review of state court convictions that § 2254 intended to preserve.

*Greene* is not to the contrary. Greene was convicted of second degree murder, robbery, and conspiracy based in part upon the redacted confessions of his co-defendants. He filed his appeal as of right with the Pennsylvania Superior Court, the state's intermediate appellate court, arguing that severance of his trial was mandated by the rule announced in *Bruton v. United States*, 391 U.S. 123 (1968), that the Confrontation Clause forbids the prosecution from introducing a nontestifying codefendant's confession implicating the defendant in the crime. The Pennsylvania Superior Court affirmed the conviction, holding that the redaction had cured any problem under *Bruton*. *Id.* at 42–43. Greene then filed a petition for allowance of appeal to the Pennsylvania Supreme Court, raising the same *Bruton* claim. While that petition was pending the United States Supreme Court held in *Gray v. Maryland*, 523 U.S. 185, 195 (1998), that the type of redactions performed on the co-defendants statements at Greene's trial did not satisfy *Bruton.* The Pennsylvania Supreme Court initially granted Greene's petition for allowance of appeal, limited to the question whether

7

admission of the redacted confessions violated Greene's Sixth Amendment rights, but dismissed the appeal as improvidently granted after the parties filed merits briefs. Greene then filed for federal relief under § 2254. *Id.* at 43. The issue before the Supreme Court was whether *Gray* applied to Greene's claim for federal relief. The Court held that *Gray* did not apply because it had not been decided at the time the Pennsylvania Superior Court decided Greene's claim on the merits. The Court rejected Greene's argument that the relevant decision to which the "clearly established Federal law" criterion must be applied was the Pennsylvania Supreme Court's decision dismissing his appeal as improvidently granted since that decision did not adjudicate the relevant claim on the merits.

Here, by contrast, *Giles* was decided before the court of appeals decided Jensen's direct appeal as of right. The fact that Jensen's appeal was as of right means that the court of appeals could not simply decline to decide Jensen's appeal as the Pennsylvania Supreme Court did in *Greene* and the Wisconsin Supreme Court did here. Further review by those courts is discretionary; in both states a defendant has a right to only one appeal. The Wisconsin Court of Appeals, on the other hand, was required to, and did, decide Jensen's claim that his rights under the Confrontation Clause had been violated by the admission at trial of Julies statements and letter to the police based on the then-existing federal law, including *Giles*. Indeed, the Wisconsin Court of Appeals devoted an entire section of its opinion to its discussion of *Giles*. *See Jensen II*, 2011 WI App 3 at ¶¶ 22–35. And while it is true that the court of appeals declined to decide whether Julie's statements to police were admissible under the State's newly formulated forfeiture argument, it nevertheless decided Jensen's confrontation claim on the merits. It is therefore the decision of the Wisconsin Court of Appeals that is the relevant state court decision for purposes of determining the federal law that applies.
8

In his motion to alter or amend the judgment, Respondent also takes issue with the court's denial of his motion to file a supplemental brief on the issue of whether the trial court's decision on the forfeiture issue was entitled to the deferential review provided under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214. Respondent notes that Jensen had initially argued in his brief in chief that this court's review of his confrontation claim was de novo because the Wisconsin Court of Appeals had not decided his claim on the merits, choosing instead to conduct a harmless error analysis. Respondent agreed that the court of appeals had not decided Jensen's claim on the merits and argued that the relevant state court decision for this court to review was therefore the trial court's decision. Then, relying on *Greene*, Respondent argued that *Giles* did not apply since it had not been decided at the time the trial court rendered its decision. Faced with this argument, Jensen argued in reply that the court of appeals had decided his confrontation claim on the merits insofar as *Greene* was concerned; the court had simply failed to decide the first prong of whether a violation had occurred, choosing instead to decide the claim under a harmless error analysis. Viewing this as a change in Jensen's position, Respondent moved for leave to submit supplemental briefing on whether the trial court's ruling on the forfeiture issue was entitled to deferential review. Finding no need for further briefing on the issue, the court denied Respondent's motion without comment. (ECF No. 65.)

Respondent now argues that the court erred in failing to deferentially review the trial court's determination that Jensen had forfeited his right to cross examine Julie. In support of this argument, Respondent cites *Atkins v. Zenk,* 667 F.3d 939 (7th Cir. 2012), which addressed the proper standard for habeas review of a claim for ineffective assistance of counsel arising out of an Indiana state court conviction. The state trial court had denied the claim upon a finding that the defendant had failed

to satisfy both prongs—deficient performance and prejudice—of the test for ineffective assistance of counsel established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The state court of appeals affirmed, but addressed only the deficient performance prong of the test. In deciding the proper standard of review under § 2254, the Seventh Circuit held that "[b]ecause both prongs have been addressed by Indiana state courts, in one form or another, the deferential standard of review set out in § 2254(d) applies to both." *Id.* at 944. Respondent argues that under *Atkins*, this court was required to give deferential review to the trial court's determination of the forfeiture issue.

Respondent acknowledges that its argument seems to be in conflict with *Woolley v. Rednour*, 702 F.3d 411 (7th Cir. 2012), a more recent Seventh Circuit decision also raising an ineffective assistance of counsel § 2254 claim under *Strickland*. In *Woolley*, the Illinois trial court had found the performance of trial counsel constitutionally deficient, but concluded it had not prejudiced the defense. The state appellate court affirmed the trial court's denial of Woolley's motion for post conviction relief, focusing on only the second prong of the *Strickland* test. On appeal from the district court's denial of Woolley's petition for federal relief under § 2254, the respondent argued the court should apply AEDPA deference to both prongs of the *Strickland* test because the state had ultimately prevailed on Woolley's claim. Woolley, on the other hand, argued that the court should review the trial court's finding that his attorney's performance was deficient with deference, since the state court of appeals had not addressed the issue and the trial court was the only court to make a finding on the issue. The court rejected both parties' arguments, noting "[w]hen a state collateral review system issues multiple decisions, we typically consider "the last reasoned opinion on the claim"—here the opinion of the Illinois Appellate Court." *Woolley*, 702 F.3d at 421 (quoting *Ylst*

10

*v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Because the Illinois Appellate Court had not reached the ineffectiveness prong of *Strickland*, the Seventh Circuit held that federal review of that prong was de novo. Respondent contends that this court followed *Woolley* in using the de novo standard in its review of Jensen's claim that admission of the disputed evidence at trial violated his rights under the Confrontation Clause. Respondent argues that *Woolley* is distinguishable from *Atkins* and that the court manifestly erred in following *Woolley*.

As Respondent suggests, *Woolley* is distinguishable from *Atkins* in that, in *Woolley* the state trial court had found in favor of the defendant on the performance prong. In *Atkins*, in contrast, the trial court had found in the state's favor on the performance prong. The principles of federalism and comity that underlie habeas jurisprudence require deference to state court decisions that favor the state, not those that favor the defendant. Thus, it was reasonable to apply AEDPA deference to the trial court's decision in *Atkins* that found in favor of the state on the performance prong, and to review the issue de novo in *Woolley* where the trial court found in favor of the defendant, even though neither state's appellate court addressed the issue. Here, however, neither *Woolley* nor *Atkins* applies because the Wisconsin Court of Appeals did decide the issue. The court assumed a violation had occurred and proceeded to consider whether the error was harmless. *Woolley*, to the extent it applies at all, suggests that where a state court rules favorably to the defendant on one element of a constitutional claim, federal habeas review of that element under § 2254 is de novo.

Respondent's argument over the proper standard of review is, in any event, somewhat disingenuous. The question of whether admission of Julie's statements to the police was constitutional error depends on whether *Giles* applies. If, as the court has concluded, *Giles* does apply, then the standard of review does not matter. Whether review is deferential or de novo,

11

admission of Julie's statements to police based solely on the trial court's pretrial finding by a preponderance of the evidence that Jensen killed her was constitutional error under *Giles*. The trial court's decision admitting this evidence is contrary to the clearly established federal law set forth in *Giles*. As noted above and in the court's decision granting the petition, "[t]he State did not even argue to the contrary. Instead, the State argued that *Giles* left open the possibility that Julie's testimonial statements could still be admissible upon a finding that Jensen had killed her in order 'to prevent her testimony in a family court action.'" (Decision at 14 (quoting *Jensen II*, 2011 WI App 3, at ¶ 33.)). Respondent's argument over the proper standard of review is simply another vehicle for challenging the court's conclusion that *Giles* must be applied.

It should also be noted that Respondent's motion for supplemental briefing failed to comply with the local rules because it failed to attach its proposed supplemental brief to its motion. Civil L.R. 7(i) ("Any paper, including any motion, memorandum, or brief, not authorized by the Federal Rules of Civil Procedure, these Local Rules, or a Court order must be filed as an attachment to a motion requesting leave to file it."). Parties' compliance with the Local Rules is a basic expectation of the courts in this district—there is even a rule expressly to that effect. General L.R. 1 ("Compliance with the rules is expected.") Courts act within their discretion when enforcing compliance. *E.g.*, *Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008) ("District courts have the discretion to require strict compliance with the local rules....").

Moreover, even if the court would have been inclined to ignore the local rule because of the importance of the issue raised, Respondent's motion did not even establish the position Respondent intended to take in its then-unresearched and undrafted supplemental brief. (Resp't Mot. for Supp. Br. 3–4, ECF No. 64 ("Depending on the outcome of additional research, Schwochert might well

12

agree with Jensen that the state appellate court's harmless-error determination is a merits-based decision.").) In effect, Respondent's motion was not a request to file a supplemental brief, but for a delay so that Respondent could conduct "more research" on the standard of review—a legal issue that existed from the outset and that both parties thoroughly addressed in the briefs they had already filed. It made no sense to delay the case even more.

### III. CONCLUSION

Julie Jensen died more than fifteen years ago. Due at least in part to uncertainties and changes in the law, it took almost ten years, including a trip to the Wisconsin Supreme Court, before her husband's trial. After careful consideration, this court concluded that because of another change in the law, Jensen's conviction cannot stand. Admitting Julie's uncross-examined statements to police violated Jensen's constitutional right to confront the witnesses against him under clearly established federal law, and the error had substantial and injurious effect or influence in determining the jury's verdict. Nothing in Respondent's motion to amend or alter the judgment convinces the court that its decision was in error.

In reaching this decision, the court offers no opinion concerning the guilt or innocence of Mark Jensen. The question of a petitioner's guilt is beyond the scope of this court's review under § 2254. The court's review is limited to whether Mark Jensen was afforded the procedural protections mandated by the Constitution as construed by the Supreme Court. For the reasons stated in the court's decision granting the petition, the court concludes that he was not. The State must

therefore decide whether it will appeal the court's ruling or proceed now to a retrial. Its motion to alter or amend the judgment is denied.

**SO ORDERED** this ___23rd___ day of January, 2014.

                                                s/ William C. Griesbach
                                                William C. Griesbach, Chief Judge
                                                United States District Court

14

Case 2:11-cv-00803-WCG   Filed 01/23/14   Page 14 of 14   Document 68